The State of Alabama appeals from an order of the Montgomery Circuit Court awarding $2,011,160.36 in attorney fees and as reimbursement for expenses to five attorneys who, at the request of former Governor Fob James, filed a lawsuit against the tobacco industry shortly before Attorney General Bill Pryor and other state attorneys general negotiated a national settlement of pending and impending litigation against the tobacco industry.[2] Governor James hired these attorneys on November 12, 1998, pursuant to Ala. Code 1975, § 41-15B-2(i); he authorized them to file the action to recover tobacco-related damages on behalf of the State. (These attorneys will hereinafter be referred to as "James's attorneys.") Governor James entered into a contingency-fee contract with the attorneys. That contract authorized an attorney fee of up to seven percent of the total amount of any recovery on behalf of the State and provided for the reimbursement of expenses; however, the contract specifically provided that "if a proposed settlement is reached by the Attorney General without the Attorneys' substantial participation, no attorneys' fee will *Page 419 
be paid to the Attorneys." This contract was not submitted for review to the Contract Review Permanent Legislative Oversight Committee. See Ala. Code 1975, § 29-2-40 et seq. Shortly after the tobacco industry had entered into a national settlement with the attorneys general of the various states, including Alabama, Attorney General Bill Pryor discharged James's attorneys and dismissed the action they had filed at the request of Governor James. This appeal concerns only the trial court's suasponte order requiring the State to pay James's attorneys in excess of $2 million from the first $38,787,140 payment to the State from proceeds generated by the national tobacco settlement and granting the attorneys a lien against those proceeds for the amount of the award. These proceeds are earmarked for potential deposit into the Children First Trust Fund. See Ala. Code 1975, § 41-15B-2(c), as amended by Ala. Acts 1999, Act No. 99-390.
The State raises two issues: (1) whether the trial court erred in ruling that the contingency-fee contract executed by Governor James and his attorneys was exempt from review by the Contract Review Permanent Legislative Oversight Committee, despite what the State says is plain language in §§ 29-2-41 and 29-2-41.2(b) indicating that the contract was void ab initio; and, alternatively, (2) whether the trial court erred in ruling that James's attorneys had "substantially participated" in the national tobacco-settlement negotiations and therefore that they were entitled to a substantial fee under the contract, notwithstanding admissions by James's attorneys that they had not been allowed to participate in those negotiations and without regard to the provisions of the national tobacco settlement that created a separate procedure for paying fees to attorneys involved in the settlement negotiations.
We note at this point that where the facts are not in dispute and we are presented with pure questions of law, this Court's standard of review is de novo. See Ex parte Graham, 702 So.2d 1215, 1221 (Ala. 1997); Beavers v. County of Walker, 645 So.2d 1365, 1372 (Ala. 1994).
With respect to the State's first issue, the trial court's order provides:
 "The Attorney General conceded that Governor James had the authority to file this lawsuit and to hire [James's attorneys], and the accuracy of the hours and fees submitted by [James's attorneys], yet offered no evidence to dispute these claims, but relied solely upon two legal contentions:
 "(1) That the contingency fee contract was void ab initio for failure to file the contract with the Contract Review Permanent Legislative Oversight Committee relying on Ala. Code § 29-3-41; however, that statute is not applicable to the instant contingency fee contract which was not a contract `to be paid out of appropriated funds.' Accordingly, the Court finds that the contingency fee contract for legal services to be provided by [James's attorneys] was not required to be filed with the Committee. As Governor James possessed statutory authority to enter into the contracts for legal services to be performed by [James's attorneys], the contingency fee contracts were valid and were binding on the State of Alabama, at least until terminated by the Attorney General."
We disagree.
The parties' basic point of contention is whether §§ 29-2-40
through 29-2-41.3, when read together, required that the contingency-fee contract be submitted for review to the oversight committee or whether the contract was exempt from review because any potential attorney fee or reimbursement for expenses was not to be "paid out of appropriated funds, federal or state, on a state warrant issued as recompense for those services." See § 29-2-41.
 "In determining the meaning of a statute, this Court looks to the plain meaning *Page 420 
of the words as written by the legislature. As we have said:
 "`"Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."'
 "Blue Cross Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala. 1998) (quoting IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992)); see also Tuscaloosa County Comm'n v. Deputy Sheriffs' Ass'n, 589 So.2d 687, 689 (Ala. 1991); Coastal States Gas Transmission Co. v. Alabama Pub. Serv. Comm'n, 524 So.2d 357, 360 (Ala. 1988); Alabama Farm Bureau Mut. Cas. Ins. Co. v. City of Hartselle, 460 So.2d 1219, 1223 (Ala. 1984); Dumas Bros. Mfg. Co. v. Southern Guar. Ins. Co., 431 So.2d 534, 536 (Ala. 1983); Town of Loxley v. Rosinton Water, Sewer, Fire Protection Auth., Inc., 376 So.2d 705, 708 (Ala. 1979). It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the law is, not to say what it should be. Therefore, only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers. See Ex parte T.B., 698 So.2d 127, 130
(Ala. 1997)."
DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275 (Ala. 1998).
Section 29-2-41.2(b) is clear on its face: "Notwithstanding any other provisions of [Article 3, Chapter 2, Title 29], all contracts foremployment of an attorney to provide legal services . . . shall bereviewed by the [contract review oversight] committee," with the sole exception of "contracts for appointment of attorneys for the Department of Transportation for right of way condemnation cases." (Emphasis added.) It is clear from our examination of the five sections of Article 3 dealing with the contract review oversight committee that the Legislature did not intend to limit the committee's oversight to contracts for legal services that would be "paid out of appropriated funds, federal or state, on a state warrant issued as recompense for those services." See § 29-2-40 through § 29-2-41.3. Therefore, we hold the contingency-fee contract at issue here void under the express terms of § 29-2-41: "Any contract made by the state or any of its agencies or departments in violation of this section and without prior review by the committee of either the contract or the letter of intent to contract shall be void ab initio." Our holding is based on the Legislature's clear expression of intent that the state not be allowed to contract for certain services unless the contracts for those services are reviewed by the committee.
We note that James's attorneys argue that the title to Act No. 95-652, which amended § 29-2-41.2, creates an ambiguity in the language contained in that Act. The title reads:
 "[An Act] Amending Section 29-2-41.2 of the Code of Alabama 1975, to provide procedures for review of certain legal services contracts by the Legislative Contract Review Oversight Committee."
(Emphasis added.) The pertinent portion of the body of the Act, which is codified as § 29-2-41.2(b), reads:
 "Notwithstanding any other provisions of this article, all contracts for employment of an attorney to provide legal services, including contracts involving an attorney providing legal services under an agreement with the Attorney General, shall be reviewed by the committee. Provided, however, contracts *Page 421 for appointment of attorneys for the Department of Transportation for right of way condemnation cases are exempt from the provisions of this Act."
(Emphasis added.) James's attorneys contend that the word "certain" in the title conflicts with the word "all" in the body. In other words, they argue that the preamble states the Legislature's intent that only "certain" legal-services contracts be reviewed by the committee, not "all" legal-services contracts, as the language of the body of the Act states. They argue further that § 29-2-41 specifically exempts a legal-services contract, such as theirs, that would not be paid out of appropriated funds. Section 29-2-41 provides: "The committee shall have the responsibility of reviewing contracts for . . . professional services with private entities or individuals to be paid out of appropriated funds, federal or state, on a state warrant issued as recompense for those services."
However, James's attorneys overlook the last sentence of §29-2-41.2(b), which came from Act No. 95-652: "Provided, however, contracts for appointment of attorneys for the Department of Transportation for right of way condemnation cases are exempt from the provisions of this article." This exemption of a particular kind of legal-services contract would preclude the Legislature from using the word "all" in the title. The word "certain" is logical and unambiguous as it is used in the title. Because the title of the Act and the body of the Act, when read together, are unambiguous, there is no need to look to the title when interpreting § 29-2-41.2(b). See Hamrick v.Thompson, 276 Ala. 605, 609, 165 So.2d 386 (1964); Newton v. City ofTuscaloosa, 251 Ala. 209, 218, 36 So.2d 487 (1948).
With respect to the State's second issue, the trial court stated in its order:
 "The evidence is undisputed that [James's attorneys] made several substantial contributions to bringing about the settlement which constitute `substantial participation' by [James's attorneys]. The undisputed evidence is that the tobacco defendants did not agree to a settlement with Alabama until [Governor James's] lawsuit was filed; this lawsuit was instrumental in bringing about the tobacco settlement with Alabama; [James's attorneys] saved the State from a potential fee claim by attorneys representing plaintiffs in [Blaylock et al. v. American Tobacco Co. et al., (Montgomery Circuit Court, CV-96-1508)]; [James's attorneys] advised Governor James to consent to the takeover of this litigation and the tobacco settlement by the Attorney General in order to permit settlement to be consummated by the Attorney General on behalf of the State; this litigation included both smoking and smokeless tobacco and sought equitable relief, including injunctive relief against promoting tobacco sales to minors, and presented the only claim by the State against smokeless tobacco defendants; and this litigation made the State potentially eligible for a share or larger share of the Strategic Contribution Fund to be awarded under the settlement agreements in proportion to each state's active participation. The significance of the instant tort litigation filed by Governor James was acknowledged by Counsel for the tobacco industry in their refusal to accept a release of the contract liability pursued by the Attorney General without a final release of liability based on the tort and equitable claims filed by Governor James. Based on the foregoing, the Court finds `substantial participation' by [James's attorneys] in bringing about the settlement approved by this Court."
Once again, we disagree. Even assuming that the contract was not void under § 29-2-41, James's attorneys would have no claim for a fee under the contract because the undisputed evidence established that they did not "substantially participate" in the Attorney General's negotiation of the national tobacco settlement. As *Page 422 
previously stated, the document on which the attorneys relied clearly states: "Provided, if a proposed settlement is reached by the Attorney General without the Attorneys' substantial participation, no Attorneys' fees will be paid to the Attorneys." Walter Byars testified as follows:
 "Q. . . . [Y]ou were not privy to any of the negotiations that had occurred between state attorneys general and the tobacco industry that produced that agreement; is that correct?
". . . .
 "A. I did not participate in the negotiations, nor did anyone in this team that I know of, with the tobacco defendants. We weren't given that opportunity."
We can find no evidence in the record that refutes Mr. Byars's testimony; therefore, we find no evidence to support the trial court's conclusion that James's attorneys "substantially participated" in the negotiation of the national tobacco settlement. Likewise, the record does not indicate that the mere filing of the action by James's attorneys in any way assisted the attorney general in reaching a settlement with the tobacco industry. To the contrary, the undisputed evidence indicates that James's attorneys vigorously opposed Alabama's entering into the settlement, which, when James's attorneys filed their action (November 12, 1998), was imminent.
Therefore, the trial court had no sound legal basis for ordering that over $2 million in attorney fees and expense reimbursements be paid to James's attorneys. Based on our examination of the record and the briefs, we conclude that any argument in favor of authorizing the withdrawal of such a substantial amount of money from funds earmarked for potential deposit into the Children First Trust Fund (which was established to benefit "at-risk children," see Ala. Code 1975, §41-15B-1 et seq.), in order to pay for the particular legal services that were rendered here (the filing of a lawsuit that was opposed by both the Attorney General and the incoming Governor), is untenable. With no contractual underpinning to support an award, we will not uphold the award of a fee that breaks down to $2,051.50 per hour for each attorney; for one attorney's paralegals; and for another attorney's "staff time."
We recognize, however, that § 41-15B-2(i) states that the Governor has the authority to "file any litigation necessary to effectuate the compelling interest of the State of Alabama to recover tobacco-related damages incurred by the state or pursue any other legal cause of action in which the state has an interest," and that Governor James did authorize these attorneys to file an action on behalf of the State.[3]
Whether that course of action was wise or appropriate is not for us to decide. In Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9,18 So.2d 810, 815 (1944), this Court stated that "[a]ll . . . questions of propriety, wisdom, necessity, utility, and expediency are held exclusively for the legislative bodies, and are matters with which the courts have no concern." We heed this same admonition — for the courts to decide issues involving power, not wisdom or expediency — when we are dealing with a decision such as this one by the head of the executive department of state government. At oral argument, Mr. Byars informed the Court that he had been paid $125 per hour for time he had spent preparing a complaint he had filed against the tobacco defendants before any "contract" was entered into by Governor James and James's attorneys. It is undisputed that on this contract James's attorneys spent 838.9 hours of attorney time; that members of their staffs spent 136 hours of staff time; and that James's attorneys incurred $10,879.86 in expenses at the behest of Governor James and on behalf of the State, for which they have not been paid. Therefore, we hold that, under *Page 423 
the doctrine of quantum meruit, James's attorneys are entitled to a reasonable fee. From our perspective, a reasonable fee should be based on no more than $125 per hour for the time spent on the case by an attorney ($104,862.50); no more than $75 per hour for the time spent on the case by an attorney's support staff ($10,200); plus documented expenses ($10,879.86). Our examination of the record indicates that a fee of more than $115,062.50, in addition to a reimbursement of $10,879.86 for expenses incurred, would be unreasonable as a matter of law. Under the circumstances (the attorneys' authorized legal challenge was thwarted by the Attorney General's settlement and his discharge of them as counsel for the State), we feel compelled, in accordance with general equitable principles, to allow an attorney's fee of this reduced amount to be paid to James's attorneys.
For the foregoing reasons, the trial court's order is reversed and the case is remanded for entry of an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Hooper, C.J., and Maddox and Brown, JJ., concur.
See, J., concurs in the result.
Cook, Johnstone, and England, JJ., dissent.
Lyons, J., recuses himself.
[2] Only four of these five attorneys are parties to this appeal — Walter Byars, Ted Taylor, Larry Morris, and Michael Evans. One of the attorneys, Jere Beasley, declined to accept a fee for his services in the case. This Court granted the State's motion to dismiss Mr. Beasley as an appellee; therefore, he is not a party to this appeal.
[3] The question whether § 41-15B-2(i) is constitutional under this Court's holding in Ex parte Weaver, 570 So.2d 675 (Ala. 1990), is not before us, and we do not address it.