SEE, Justice.
E.J.M. appealed to the Court of Criminal Appeals from the order of the Juvenile Court of Lawrence County transferring his case to the Lawrence Circuit Court for prosecution as an adult. The Court of Criminal Appeals affirmed the juvenile court’s transfer order, without an opinion. E.J.M. v. State, 928 So.2d 1077 (Ala.Crim.App.2004) (Cobb and Shaw, JJ., concurring in the result). We granted E.J.M.’s petition for the writ of certiorari, and we affirm the Court of Criminal Appeals’ judgment.

Facts and Procedural History

The evidence at the transfer hearing shows as follows. On the evening of July 15, 2003, E.J.M. visited Cole Cannon’s mobile home. Cannon showed E.J.M. his baseball-card collection, which E.J.M. thought was valuable. Around midnight, Cannon went to E.J.M.’s mobile home. While Cannon was at E.J.M.’s mobile home, E.J.M. and his friend, Colby Smith, went to Cannon’s mobile home and stole the baseball-card collection. E.J.M. hid the baseball-card collection behind another mobile home and retrieved it after Cannon left E.J.M.’s mobile home.
According to E.J.M., he returned to Cannon’s mobile home with Smith early that morning after drinking and using drugs. E.J.M. testified that Cannon was also drunk when they arrived at his mobile home. Cannon had told E.J.M. and Smith that he had some “acid” in his possession, *1083 but he did not have any “acid” when E.J.M. and Smith visited him. E.J.M. and Smith got into a fight with Cannon. According to E.J.M., Smith struck Cannon with a baseball bat to protect E.J.M., and E.J.M. punched Cannon in the face several times. E.J.M. then took $350 and Cannon’s driver’s license from Cannon’s wallet. E.J.M. told the police that he may have started a fire in Cannon’s mobile home, but he could not remember because he was drunk at the time.
Smith gave the police a different account of what happened that night. He stated that after he and E.J.M. stole Cannon’s baseball-card collection, they went back to Cannon’s mobile home three times. Smith stated that the first time they returned, E.J.M. hit Cannon with a baseball bat and took money from Cannon’s wallet. Smith said that E.J.M. cleaned up the blood and then hid the baseball bat and the empty wallet. E.J.M. then set fire to the couch and started fires in two other areas in the mobile home. According to Smith, E.J.M. and Smith returned to Cannon’s mobile home a second time, and E.J.M. turned on the faucet in the kitchen sink in an attempt to make it overflow to stop the fire. Smith stated that on their third and final trip, because the smoke was so thick, they could not enter Cannon’s mobile home, so they returned to E.J.M.’s mobile home.
Cannon died from smoke inhalation; the blunt-force trauma to his head was a contributing factor in his death. The autopsy revealed that Cannon had suffered several broken ribs and a contusion to his forehead.
At the time of these events, E.J.M. was 14 years old. The State moved the juvenile court for a hearing to transfer E.J.M. from the juvenile court to the circuit court for treatment as an adult offender because he was charged with two counts of capital murder. E.J.M. was charged with murder made capital because it was committed during the course of a robbery, see § 13A-5-40(a)(2), Ala.Code 1975, and murder made capital because the death occurred as the result of arson, see § 13A-5-40(a)(9), Ala.Code 1975.
Based on his status as an indigent and his history of mental illness, E.J.M. moved the juvenile court for funds to retain a mental-health expert to testify at his transfer hearing. E.J.M. requested $6,000 in State. funds to retain Karen Salekin, Ph.D., a mental-health and juvenile-delinquency expert. The juvenile court was aware that Karen Lang, E.J.M.’s juvenile probation officer, had stated that she was concerned about his mental health. However, the juvenile court denied E.J.M.’s motion for funds to retain a mental-health expert.
E.J.M. then moved the juvenile court for an outpatient mental evaluation. The juvenile court granted that motion and ordered that E.J.M. undergo a psychological evaluation by the Alabama Department of Mental Health and Mental Retardation. Dr. Brent Willis, Psy.D. (doctor of clinical psychology), a mental-health expert at the Taylor Hardin Secure Medical Facility, evaluated E.J.M. and prepared a report. Dr. Willis diagnosed E.J.M. with a depressive disorder, oppositional defiant disorder, conduct disorder, and substance abuse. Following Dr. Willis’s examination, E.J.M. again moved the juvenile court for funds to retain the mental-health expert of his choosing, Dr. Salekin. The juvenile court once again denied E.J.M.’s motion.
At the transfer hearing held pursuant to § 12-15-34(d), Ala.Code 1975, Dr. Willis testified to E.J.M.’s mental health.[1] Dr. *1084 Willis concluded that E.J.M. was sufficiently emotionally mature for his case to be transferred to the circuit court. The juvenile court transferred the case to the circuit court.
E.J.M. appealed the juvenile court’s transfer order to the Court of Criminal Appeals. The Court of Criminal Appeals affirmed the juvenile court’s order, without an opinion, and we granted E.J.M.’s petition for the writ of certiorari.

Standard of Review

The facts before us are undisputed. When we address a pure question of law, our standard of review is de novo. Christian v. Murray, 915 So.2d 23 (Ala.2005); State v. American Tobacco Co., 772 So.2d 417, 419 (Ala.2000); and Ex parte Graham, 702 So.2d 1215, 1221 (Ala.1997).

Analysis

We granted E.J.M.’s petition for certiorari review to consider E.J.M.’s arguments (1) that the Court of Criminal Appeals’ decision conflicts with Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); (2) that two of the cases the Court of Criminal Appeals relied upon in affirming the transfer order, Ex parte H.P.W., 628 So.2d 514 (Ala.1993), and L.L.J. v. State, 746 So.2d 1052 (Ala.Crim.App.1999), are inconsistent; and (3) that H.P.W. should be overruled. The substance of E.J.M.’s argument is that when the juvenile court denied his request for State funds to retain a mental-health expert of his own choosing, he was denied due process and his fundamental right to present expert testimony at the transfer hearing.
I.
E.J.M. argues that the Court of Criminal Appeals’ decision in his case contradicts the decision of the Supreme Court of the United States in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). In Kent, the Supreme Court held that the transfer of a juvenile case to the circuit court where the juvenile would be treated as an adult offender was invalid because the juvenile court did not rule on any motions, hold a hearing, or confer with Kent, Kent’s parents, or Kent’s counsel before ordering the transfer. 383 U.S. at 546, 86 S.Ct. 1045. It was in this factual context that the Supreme Court held that a transfer hearing at which the juvenile court waives its jurisdiction over a juvenile is a “ ‘critically important’ action determining vitally important statutory rights of the juvenile.” 383 U.S. at 556, 86 S.Ct. 1045. Because a transfer hearing is a “critically important” proceeding, the juvenile court must engage in “[m]eaningful review[, which] requires that the reviewing court should review” the facts and issues involved in the juvenile transfer proceeding. 383 U.S. at 561, 86 S.Ct. 1045. The Supreme Court condemned the lack of review by the juvenile court and held that a juvenile court cannot transfer a juvenile’s *1085 case to the circuit court and waive its exclusive jurisdiction over the juvenile without a statement that is “sufficient to demonstrate that the statutory requirement of ‘full investigation’ has been met.” 383 U.S. at 561, 86 S.Ct. 1045.
The Supreme Court’s concern in Kent was that no transfer hearing was held. In the case before us, a transfer hearing was held, the juvenile court ruled on motions, E.J.M. was represented by counsel, and the juvenile court provided E.J.M. with psychiatric evaluation at the State’s expense. This was not the type of juvenile-court proceeding the Supreme Court in Kent was referring to as lacking in due process and fair treatment. Because the facts in Kent are distinguishable from the facts of this case, E.J.M. has not demonstrated that the Court of Criminal Appeals’ decision in this case conflicts with Kent.
II.
E.J.M. argues that this Court’s holding in Ex parte H.P.W., 628 So.2d 514 (Ala.1993), is inconsistent with the Court of Criminal Appeals’ holding six years later in L.L.J. v. State, 746 So.2d 1052 (Ala.Crim.App.1999). E.J.M. urges this Court to overrule H.P.W. and to issue an opinion consistent with the reasoning in L.L.J., so as to render L.L.J. binding precedent. E.J.M.’s brief, at 23-28. However, those two cases are factually distinguishable and concern different rights. E.J.M.’s argument that we should overrule H.P.W. is not persuasive.
The question in L.L.J. was whether a juvenile has the right to present at the transfer hearing the testimony of a mental-health expert retained by the juvenile. 746 So.2d at 1055. In contrast, the right at issue in H.P.W. was whether a juvenile is entitled to government funds to pay for a psychiatrist of his choosing, in addition to a court-appointed psychiatrist, to testify at the transfer hearing. 628 So.2d at 515-16.
The juvenile court in L.L.J. transferred L.L.J. to the circuit court upon consideration of the factors enumerated at § 12-15 — 34(d), Ala.Code 1975. At the transfer hearing, the State called two expert witnesses to testify as to psychological examinations they had performed on L.L.J. 746 So.2d at 1055. L.L.J. retained her own psychiatrist, Dr. Robert Lyman, to testify on her behalf. 746 So.2d at 1055. The juvenile court did not allow Dr. Lyman to testify. L.L.J. appealed, arguing that by not allowing Dr. Lyman to testify the juvenile court had denied her “a full and fair hearing on the merits and [had] violated her constitutional right to due process.” 746 So.2d at 1063.
The Court of Criminal Appeals held that the juvenile court should have admitted Dr. Lyman’s testimony because his testimony “would have been relevant for purposes of rebutting the State’s expert testimony that [L.L.J.’s] conduct disorder was most likely not treatable.” 746 So.2d at 1063. The Court of Criminal Appeals stated further that “the juvenile court violated [L.L.J.’s] due process rights by refusing to allow her to call Dr. Lyman as a witness on her own behalf.” 746 So.2d at 1063.
The facts in H.P.W. are distinguishable from those in L.L.J. In H.P.W. the juvenile court initially transferred H.P.W. to the circuit court without assessing his mental health. 628 So.2d at 515. The Court of Criminal Appeals set aside the transfer order and remanded the case to the juvenile court so that H.P.W. could undergo a mental evaluation. Because H.P.W. was indigent, the court appointed a *1086 psychiatrist, Dr. Dennis E. Breiter,[2] to conduct a mental evaluation. Dr. Breiter found H.P.W. “competent to stand trial for capital murder.” 628 So.2d at 516. H.P.W. then moved the juvenile court for State funds to hire his own mental-health expert. The juvenile court denied his request and transferred his case to the circuit court. The Court of Criminal Appeals affirmed the transfer order, H.P.W. v. State, 617 So.2d 705 (Ala.Crim.App.1992), and this Court affirmed the judgment of the Court of Criminal Appeals, 628 So.2d at 514 (Ala.1993).
The primary distinction between L.L.J. and H.P.W. is the function of the mental-health expert each juvenile wanted to present as a witness. In L.L.J., L.L.J. wanted to call, at her own expense, Dr. Lyman to rebut the testimony of State mental-health expert witnesses. By prohibiting Dr. Lyman’s testimony, the juvenile court denied L.L.J. a chance to rebut the testimony of State witnesses and violated L.L.J.’s due-process rights. In contrast, H.P.W., who had already been examined by a court-appointed psychiatrist, was requesting State funds to pay for a mental-health expert to offer a second opinion on his mental competence. Because Dr. Breiter was court-appointed and independent and was not a State witness, the rationale in L.L.J. that a juvenile has the constitutional right to call a witness on his own behalf to rebut a State witness does not apply in H.P.W.[3]
Therefore, because the rights and facts at issue in the two cases are distinguishable, there is no inconsistency between this Court’s holding in H.P.W. and the Court of Criminal Appeals’ holding six years later in L.L.J. Therefore, E.J.M.’s argument that we should overrule H.P.W. because it is inconsistent with L.L.J. is not persuasive.
III.
E.J.M. also urges this Court to overrule H.P.W. because, he argues, its holding does not meet the requirements of due process. E.J.M. urges this Court to “find that due process and fundamental fairness require that upon a proper showing, a juvenile defendant is entitled to expert assistance in light of the § 12-15-34 factors.” E.J.M.’s brief, at 28. E.J.M. does not show how appointing Dr. Willis at the State’s expense to independently evaluate E.J.M. in order to determine whether *1087 E.J.M. was mentally competent to stand trial in the circuit court in any way denies him due process or violates principles of fundamental fairness.
Contrary to Judge Cobb’s statement in her special writing in E.J.M. urging this Court to overrule H.P.W., the underlying issue in H.P.W., in L.L.J., and in the case before us today is not “to what extent is a juvenile entitled to procedural due process at the very critical transfer hearing?” 928 So.2d at 1080 (Cobb, J., concurring in the result). The principle that a juvenile is entitled to procedural due process at a juvenile transfer hearing is not being challenged here. Ex parte W.T.K., 586 So.2d 850, 853 (Ala.1991) (“It is particularly important to protect a juvenile’s constitutional rights at a transfer hearing. To transfer a juvenile and subject him to adult treatment without protecting his constitutional rights is impermissible.”).
Instead, the issue before us is whether due process requires the expenditure of State funds to pay for a mental-health expert of the juvenile’s choosing when the juvenile court has provided the juvenile with a court-appointed, independent psychiatrist. There is no such requirement. The Supreme Court of the United States has held that, even in criminal proceedings where the defendant’s guilt is at issue, the State’s obligation to provide an indigent defendant with psychiatric assistance is limited to providing one competent psychiatrist. Ake v. Oklahoma, 470 U.S. 68, 79, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) (“the obligation of the State is limited to provision of one competent psychiatrist”).
An indigent juvenile already possesses the statutory right to request a State-funded mental evaluation by a court-appointed “psychiatrist, psychologist, or other qualified examiner” before a transfer hearing. Ala.Code.1975, § 12-15-70. The juvenile court satisfied the requirements of § 12-15-70 and accorded E.J.M. full protection of his right to have access to an expert to testify to his mental status as required by § 12-15-34, Ala.Code 1975, by providing him with Dr. Willis’s services. Dr. Willis served as an independent evaluator and as the court’s expert. At the State’s expense, he independently evaluated E.J.M. and found him sufficiently emotionally mature for a transfer to the circuit court and mentally competent to stand trial.
The due-process concerns raised by E.J.M. and in Judge Cobb’s special writing concurring in the result reached by the Court of Criminal Appeals in this case are not implicated by the facts of this case or by the facts of H.P.W. H.P.W., like E.J.M., was accorded his fundamental fairness and full due-process rights when a mental-health expert was appointed at the State’s expense to conduct an independent evaluation of his mental condition before his transfer to the circuit court. Therefore, E.J.M.’s argument that H.P.W. should be overruled is without merit.

Conclusion

There is no conflict between the Court of Criminal Appeals’ decision in the case before us and the United States Supreme Court’s decision in Kent. Likewise, there is no conflict between the Court of Criminal Appeals’ decision in L.L.J. and this Court’s opinion in H.P.W. because the facts and rights at issue in each case are distinguishable. Finally, this Court finds E.J.M.’s arguments urging us to overrule H.P.W. to be without merit. In accordance with H.P.W., we hold that the juvenile court’s denial of E.J.M.’s request for State funds to pay for a psychological expert of his choosing did not violate his due-process *1088 rights. We affirm the judgment of the Court of Criminal Appeals.
AFFIRMED.
NABERS, C.J., and HARWOOD, STUART, and BOLIN, JJ., concur.

. Section 12-15-34, "Transfer of cases from juvenile court to circuit court,” sets forth the *1084 following factors, among others, the juvenile court is to consider in determining whether to grant a transfer:
"(d) Evidence of the following and other relevant factors shall be considered in determining whether the motion shall be granted:
“(1) The nature of the present alleged offense.
"(2) The extent and nature of the prior delinquency record of the child. "(3) The nature of past treatment efforts and the nature of the response of the child to the efforts.
"(4) Demeanor.
"(5) The extent and nature of the physical and mental maturity of the child.
"(6) The interests of the community and of the child requiring that the child be placed under legal restraint or discipline.”

. The juvenile court appointed Dr. Breiter “in order to comply with the court's obligation under § 12-15-34(b) to determine whether H.P.W. was mentally ill or mentally retarded.” 628 So.2d at 516.

. The reason Dr. Salekin, the mental-health expert whose testimony E.J.M. wanted to present, did not testify was because E.J.M. did not retain her, not because the trial court excluded her testimony. Moreover, contrary to E.J.M.'s assertion, the Court of Criminal Appeals did not accord L.L.J. greater due-process rights because her "financial situation” was better than E.J.M.'s. E.J.M.'s brief, at 27. The constitutional right to call a witness on his own behalf applies equally to all juveniles. L.L.J., 746 So.2d at 1063. E.J.M. had the right to call Dr. Salekin or any other mental-health expert to testify, just as L.L.J. had the right to call Dr. Lyman; however, E.J.M. does not have a constitutional right to have the State pay for Dr. Salekin, a mental-health expert of his choosing. Whisenhant v. State, 482 So.2d 1225, 1229 (Ala.Crim.App.1982) ("there exists no constitutional right to the appointment of a private psychiatrist of a defendant’s own choosing at public expense”). The Supreme Court of the United States has held that "[t]he Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,’ nor does it require the State to 'equalize economic conditions.’ ” Ross v. Moffitt, 417 U.S. 600, 612, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974) (citations omitted).