The State Department of Revenue ("the Department") appeals from a summary judgment entered by the Montgomery Circuit Court in favor of Union Tank Car Company ("UTCC") in judicial-review proceedings concerning the correctness of an administrative determination that UTCC was not subject to Alabama income tax for the tax years 1994-1998.
The facts of this case are virtually undisputed. UTCC, a Delaware corporation with its corporate headquarters located in Illinois, is in the business of manufacturing and leasing specialty railcars to customers throughout the United States. UTCC had one Alabama-based lessee, Vulcan Materials Company ("Vulcan"), during the pertinent tax years. UTCC maintains regional sales offices and repair and service centers throughout the country, although none are located in Alabama. UTCC manufactures its railcars in Illinois and Texas, and its leasing agreements are all executed in Illinois.
The terms of UTCC's standard lease require that UTCC's lessees remit payment of a fixed monthly amount to UTCC in Illinois and arrange for a railroad carrier to pick up the leased railcars from UTCC's manufacturing facility and haul them to a location designated by the lessee. The lessee is also responsible for returning the railcars to UTCC after the lease term expires. UTCC has no control over where the leased railcars are used and does not track where the railcars travel throughout the United States; however, UTCC is responsible for maintaining and repairing the railcars. The repair and maintenance of its railcars would be performed at one of UTCC's repair facilities located at sites outside Alabama.
UTCC conducted no business, had no employees, and owned no property in Alabama during the 1994-1998 tax years. Some of UTCC's leased railcars were used to transport materials through Alabama and to destinations within Alabama. None of the railcars were used strictly intrastate. For the pertinent tax years, UTCC paid the Department an Alabama license tax pursuant to §§40-21-52 and 40-8-1(b)(5), Ala. Code 1975, in lieu of paying a property tax on the railcars that traveled in Alabama. The license tax remitted by UTCC was based on the market value of the railcars and the number of miles that the railcars traveled in Alabama.
The Department had previously assessed UTCC for the Alabama franchise tax for the tax years 1983-1986. UTCC had operated in substantially the same manner during those years as it had during the tax years 1994-1998. UTCC had appealed the franchise-tax assessment to the Department's Administrative Law Division, which held that UTCC was not doing business in Alabama and thus was not subject to the Alabama franchise tax. The Department did not seek judicial review of that order.
UTCC stopped filing Alabama corporate income tax returns after 1993, and, thus, it did not report any of its income to Alabama for the tax years 1994-1998. Following an audit, the Department determined that UTCC's leased railcars had been used by lessees to haul materials within and outside Alabama during the tax years 1994-1998; thus, according to the Department's auditors, UTCC's lease income was subject to Alabama income tax pursuant to the application of § 40-18-2(a)(2) *Page 1026 
and (a)(3), Ala. Code 1975.[1] The Department apportioned UTCC's lease income to Alabama based on the proportion of the miles that all of UTCC's leased railcars traveled in Alabama compared to the total miles the railcars traveled throughout the United States; based on that determination, the Department assessed UTCC taxes, interest, and penalties in the amount of $442,782.00.
UTCC appealed from that assessment to the Department's Administrative Law Division. The Department's administrative law judge ("ALJ") conducted a de novo hearing, and after considering the evidence, the ALJ entered a judgment declaring void the assessment against UTCC. The Department sought judicial review of the ALJ's decision in the Montgomery Circuit Court. UTCC filed a motion for a summary judgment, which was opposed by the Department; both parties filed evidentiary documents and briefs in connection with the summary-judgment motion. After a hearing, the circuit court adopted the ALJ's findings of fact and legal analysis and entered a summary judgment in favor of UTCC.
The ALJ (and, thereby, the circuit court) concluded that UTCC was not subject to income tax during the tax years 1994-1998 because (1) those cases decided by courts in other states deemed by the ALJ to be better reasoned indicated that UTCC was not subject to an income tax pursuant to § 40-18-2(a)(3), Ala. Code 1975, for the tax years 1994-1998; and (2) the Department had failed to present any evidence indicating that UTCC was qualified to do business in Alabama or was otherwise licensed to do business in Alabama during the tax years 1994-1998 such that UTCC could be said to be subject to income tax pursuant to § 40-18-2(a)(2), Ala. Code 1975.[2] The Department timely appealed from the circuit court's judgment to this court.
The circuit court's judgment in this case is accorded no presumption of correctness.
 "`In reviewing the disposition of a motion for summary judgment, "[an appellate court] utilize[s] the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact," Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was "entitled to a judgment as a matter of law." Wright v. Wright, 654 So.2d 542
(Ala. 1995); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989)). Our review is further subject to the caveat that [an appellate *Page 1027 
court] must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359
(Ala. 1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990).'
 "Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala. 1997). It has also been observed that "where the facts are not in dispute and we are presented with pure questions of law, [the] standard of review is de novo.' State v. American Tobacco Co., 772 So.2d 417, 419 (Ala. 2000) (citing Ex parte Graham, 702 So.2d 1215 (Ala. 1997), and Beavers v. County of Walker, 645 So.2d 1365
(Ala. 1994))."
Carlisle v. Golden Rod Feed Mill, 883 So.2d 710,711-12 (Ala.Civ.App. 2003).
The Department first contends that UTCC was liable for income tax pursuant to § 40-18-2(a)(2), Ala. Code 1975, on the income UTCC derived from the lease of its railcars that traveled within and outside Alabama because, the Department argues, UTCC's payment of a license tax in accordance with §40-21-52, Ala. Code 1975, licensed UTCC to transact business in Alabama.
"It is [an appellate court's] responsibility to give effect to the legislative intent whenever that intent is manifested."Bean Dredging, L.L.C. v. Alabama Dep't of Revenue,855 So.2d 513, 517 (Ala. 2003); see also State v. Union Tank CarCo., 281 Ala. 246, 248, 201 So.2d 402, 403 (1967). The commonly accepted definition of a term in a statute should be applied when a term is not defined in the statute. BeanDredging, L.L.C., 855 So.2d at 517. "If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect." IMED Corp. v. SystemsEng'g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992).
Section 40-18-2, Ala. Code 1975, provides:
 "(a) In addition to all other taxes now imposed by law, there is hereby levied and imposed a tax on the taxable income, as defined in this chapter, which tax shall be assessed, collected, and paid annually at the rate specified herein and for each taxable year as hereinafter provided. Persons and subjects taxable under this chapter are:
 ". . . .
 "(2) Every corporation . . . licensed or qualified to transact business in Alabama."
Section 40-21-52, Ala. Code 1975, provides, in pertinent part:
 "Each freight line or equipment company doing business, owning, operating, renting, leasing, or furnishing cars which are operated in this state shall, on or before March 1 each year, make and file with the Department of Revenue on a form or forms prescribed by the Department of Revenue a statement . . . showing the number of miles run by all its cars over the line or lines of each separate railroad or railway in this state. . . . It shall be the duty of the Department of Revenue to examine the statement of each freight line or equipment company, and the reports of each railroad or railway company over whose lines such freight line or equipment moved, and from such statements and reports to compute the average number of cars within the state of each freight line or equipment company for the 12 months preceding October 1 of each year; for the average number of cars found to be in the state for such 12-month period, the reasonable value of such cars shall be computed, and the *Page 1028 
sum total value of the average number of cars shall be reduced to 30 percent thereof. There is hereby levied and it shall be the duty of the Department of Revenue to assess a license tax of three and one-half percent of the 30 percent value of the average number of cars within the state for the period of 12 months preceding October 1 of each year. . . ."
(Emphasis added.)
Section 40-8-1(b)(5), Ala. Code 1975, provides in pertinent part:
 "(b) As used herein, the following terms shall have the following meanings, respectively, unless the context clearly indicates otherwise:
 ". . . .
 "(5) Property of Utilities. All property assessed for taxation by the Department of Revenue pursuant to the provisions of Chapter 21 of this title; provided, that after September 30, 1979, and only to the extent required by Title III, § 306 of Pub.L. 94-210 (the Railroad Revitalization and Regulatory Reform Act of 1976, codified as 49 U.S.C. § 26c), `transportation property,' as that term is defined in the aforesaid statute, as heretofore or hereafter amended, or in any subsequent statute of similar import, shall not be assessed as Class I property and customer-owned coin-operated telephone companies shall not be assessed as Class I property."
The Department asserted in the circuit court that UTCC had paid license taxes imposed under §§ 40-21-52 and 40-8-1 (b)(5), Ala. Code 1975, in lieu of property taxes. The license tax paid by UTCC was based on the percentage of time that UTCC's leased railcars had traveled in Alabama as applied to the market value of those cars. Those Code sections impose a tax upon property that would not otherwise be subject to an Alabama tax.
The taxes levied pursuant to §§ 40-21-52 and 40-8-1(b)(5), Ala. Code 1975, seek to tax corporations that own railcars that have already traveled through Alabama and to impose a tax that is precisely in the nature of how the Department represented it to be: a tax imposed in lieu of a property tax. Payment of this tax does not itself license a corporation to transact business in Alabama, however. Furthermore, as stated above, UTCC withdrew its qualification to do business from the Secretary of State's office on December 30, 1993, and did not register with the Secretary of State to do business during the tax years 1994-1998. Therefore, UTCC was neither qualified to transact nor licensed to transact business in Alabama during the tax years 1994-1998 so as to fall within § 40-18-2(a)(2), Ala. Code 1975.
Next, the Department contends that UTCC is subject to income taxation pursuant to § 40-18-2(a)(3), Ala. Code 1975, on the income UTCC derived from the lease of its railcars that traveled within and without Alabama. That subsection imposes an income tax on "[e]very corporation doing business in Alabama or deriving income from sources within Alabama, includingincome from property located in Alabama" (emphasis added).
To support its contention that UTCC derived income from sources within Alabama, the Department relies on Boswell v.Paramount Television Sales, Inc., 291 Ala. 490, 493-94,282 So.2d 892, 894 (1973); however, that case is distinguishable from the case at hand. In that case, the Department levied a license/privilege tax against Paramount Television Sales, Inc. ("Paramount"), based upon its rental or leasing of tangible property, i.e., films and videotapes, in Alabama; Paramount shipped the tapes or films to the local *Page 1029 
stations in Alabama, and the stations returned the tapes or films to Paramount within 48 hours after the scheduled broad-cast date. The property was utilized strictly within Alabama and then shipped back to Paramount. Paramount had no office, place of business, or regular representative living in Alabama; had not qualified with the Secretary of State to do business in Alabama; and had negotiated with Alabama television stations by mail or wire outside Alabama. The Alabama Supreme Court recognized that a state could not tax the privilege of carrying on an interstate business, but it stated that a state had the power to place a levy on an activity that occurred in the state either before or after the movement of property in interstate commerce. The Alabama Supreme Court determined that transferring possession of the films to the local stations and renting them for use by the stations constituted a local act that amounted to a taxable event occurring wholly in Alabama after the films had completed their interstate journey into Alabama but before the return of the property to interstate commerce.
In this case, although some of UTCC's leased railcars were stored in Alabama, the railcars were used to transport material within and outside Alabama and did not remain solely intrastate during their use (as the films or tapes in Boswell
did). Furthermore, in Boswell, the tax at issue was a license/privilege tax, not an income tax. Thus, Boswell
does not compel reversal.
As the ALJ noted in his order, other jurisdictions offer guidance in addressing whether a corporation such as UTCC is subject to state income taxation. In Kentucky Tax Commissionv. American Refrigerator Transit Co., 294 S.W.2d 554
(Ky. 1956), the Kentucky Tax Commission sought to impose a state income tax on rental income that a company had earned from the lease of its railcars that traveled through Kentucky. The company, which was incorporated in New Jersey and had its principal place of business in Missouri, leased its railcars to various railroads for use by those companies in their businesses. Those lease agreements were negotiated and executed in Missouri, and the lease payments were sent by the company's customers to a destination outside Kentucky. The lease payments were based upon a fixed mileage rate, and the company exercised no control over the routing of the railcars or the presence of the railcars in Kentucky.
The Kentucky statute at issue in Kentucky TaxCommission imposed a tax on the income of non-Kentucky corporations that was "`derived from business done, property located, activities or sources in this state.'"294 S.W.2d at 554. The taxing authority asserted that the company had derived income from the mileage its railcars had traveled in Kentucky; thus, the taxing authority argued that part of the company's income was derived from "`activities or sources'" in Kentucky within the meaning of the statute at issue.Id. at 555. The Kentucky Court of Appeals disagreed and concluded that the company's source of income was the leases executed in Missouri and not the railcars. That court determined that if the company had been forced to sue a lessee to recover rent for the use of railcars, the action would be based on the leasing contract and that "neither that instrument nor its owner [was] located in [Kentucky]." Id.
Therefore, the court held, the company did not derive income from sources in Kentucky as required by the taxing statute.See also TV. Williams v. American Refrigerator TransitCo., 91 Ga.App. 522, 527, 86 S.E.2d 336, 337-38 (1955) (affirming decision of Georgia tax court that company conducting *Page 1030 
similar operations in Georgia derived no "business income" in Georgia).
Furthermore, in First National Leasing FinancialCorp. v. Indiana Department of State Revenue,598 N.E.2d 640, 641 (Ind.Tax Ct. 1992), a non-Indiana corporation appealed from Indiana's assessment of an income tax on rent that the corporation had received from leasing railroad equipment. In that case, the corporation executed a lease agreement outside Indiana with its wholly owned subsidiary that was also a non-Indiana corporation. The subsidiary leased the railroad equipment from the corporation and operated some of the equipment in Indiana; the subsidiary also employed eight people in Indiana. The rental payments to the corporation were independent of the amount of revenue generated by the subsidiary's use of the equipment, and the subsidiary maintained control of the leased equipment at all times. In determining that the corporation's income was not derived from sources within Indiana, the Indiana Tax Court concluded that the corporation's ownership of the property located in Indiana was "remote and incidental" to the lease transaction from which its income had been derived. Id. at 645.
Following First National Leasing, the Indiana Tax Court again addressed the issue whether an out-of-state lessor was subject to income tax. In Enterprise Leasing Co. ofChicago v. Indiana Department of State Revenue,779 N.E.2d 1284 (Ind.Tax Ct. 2002), Indiana assessed an income tax against various out-of-state corporations that had leased motor vehicles to persons or entities in Indiana. The leases were negotiated and executed outside Indiana, and the lease payments were also received outside Indiana. The lease payments were fixed and not contingent upon the use or location of the vehicles. Based upon those facts, the Indiana Tax Court held that the corporation's income was not "derived from sources within Indiana" and, thus, was not subject to Indiana's income tax. Id. at 1292.
The Kentucky and Indiana cases we have cited lead us to agree with the conclusions of the ALJ and the circuit court that UTCC did not derive income from sources within Alabama. UTCC executed its lease contracts in Illinois, the railcars were picked up in Illinois or Texas, and the lessees made lease payments to UTCC in Illinois. The amount of the lease payments were fixed, and UTCC had had no control over where the railcars were used after they had been leased from UTCC. Thus, UTCC derived income from the lease transactions in Illinois, not from sources in Alabama.
The ALJ's order correctly notes that there is a split in authority regarding whether a state may lawfully tax rental income derived from leased property that enters its borders. We agree with the ALJ's analysis regarding this issue:
 "I recognize, as did the Indiana Tax Court in [First National Leasing and Financial Corp. v. Indiana Department of State Revenue,] 598 N.E.2d [640, 646 (Ind.Tax Ct. 1992)], that there is a split of authority on the issue. In support of its position, the Department cites Truck [Renting] and Leasing Ass'n., Inc. v. [Comm'r] of Revenue, [433 Mass. 733,] 746 N.E.2d 143 (2001); [Pennsylvania] v. Universal Carloading [ Distributing] Co., Inc., [29 Pa.Cmwlth. 553,] 372 A.2d 41 (1977); American Refrigerator Transit Co. v. State Tax [Commission], 238 Or. 340, 395 P.2d 127 (1964); Oklahoma Tax [Commission] v. American Refrigerator Transit Co., 349 P.2d 746 (1959); and [Commissioner] of Revenues v. Pacific Fruit Express Co., [227 Ark. 8,] 296 S.W.2d 676 (1956). However, as noted by the Indiana Tax Court in *Page 1031 First National Leasing, the two American Refrigerator Transit cases and the Pacific Fruit Express case were decided largely on constitutional grounds, not whether the taxpayers were statutorily subject to taxation in the state. The 1977 Pennsylvania case and the 2001 Massachusetts case cited above were also decided primarily on constitutional grounds."
In this case, the Department relies on statutory construction in arguing that UTCC was deriving income from sources in Alabama; in contrast, the constitutional power to impose such a tax is not at issue. Because the Department's power to tax UTCC's income must be based upon appropriate statutory
authority, we agree with the ALJ's view that cases addressing the constitutional power of a state to enact such a tax do not warrant a judgment in the Department's favor here.
The Department also argues that UTCC is subject to Alabama income tax based upon language contained in the Multistate Tax Compact, Ala. Code 1975, § 40-27-1 et seq., and in §40-18-22, Ala. Code 1975.
Section 40-18-22, Ala. Code 1975, states:
 "Taxpayers, including corporations, as well as subchapter K entities and Alabama S corporations, engaged in multistate business in such a manner as to subject their income to allocation and apportionment provided by the Multistate Tax Compact shall allocate and apportion their income, gains, losses, deductions, credits, and exemptions in the manner provided by Chapter 27. This section shall not apply to individuals."
Article I of the Multistate Tax Compact provides, in pertinent part:
 "The purposes of this compact are to:
 "1. Facilitate proper determination of state and local tax liability of multistate taxpayers, including the equitable apportionment of tax bases and settlement of apportionment disputes.
 "2. Promote uniformity or compatibility in significant components of tax systems.
 "3. Facilitate taxpayer convenience and compliance in the filing of tax returns and in other phases of tax administration.
 "4. Avoid duplicative taxation."
§ 40-27-1 (emphasis added).
Article III of the Compact provides, in pertinent part:
 "Taxpayer Option, State and Local Taxes.
 "1. Any taxpayer subject to an income tax whose income is subject to apportionment and allocation for tax purposes pursuant to the laws of a party state or pursuant to the laws of subdivisions in two or more party states may elect to apportion and allocate his or her income in the manner provided by the laws of such state or by the laws of such states and subdivisions without reference to this compact, or may elect to apportion and allocate in accordance with article IV. . . ."
§ 40-27-1 (emphasis added).
A review of the Multistate Tax Compact reveals that the Compact does not itself impose a separate and distinct tax upon persons but instead governs the apportionment and allocation of taxes paid by persons that are already subject to income tax under other Alabama tax laws. Since UTCC was not subject to Alabama income tax pursuant to § 40-18-2(a)(2) and (a)(3), Ala. Code 1975, the Multistate Tax Compact cannot itself be construed to impose an income tax on UTCC.
Finally, the Department contends that UTCC is subject to Alabama income tax pursuant to §§ 40-18-31 and 40-18-33, *Page 1032 
Ala. Code 1975. Section 40-18-31, Ala. Code 1975, provides:
 "(a) A corporation subject to the tax imposed by Section 40-18-2 shall pay a tax equal to six and one-half percent of the taxable income of the corporation, as defined in this chapter."
(Emphasis added.)
Section 40-18-33, Ala. Code 1975, provides, in pertinent part:
 "In the case of a corporation subject to the tax imposed by Section 40-18-31, the term `taxable income' means federal taxable income without the benefit of federal net operating losses plus the additions prescribed and less the deductions and adjustments allowed by this chapter and as allocated and apportioned to Alabama."
The provisions in the above statutes have no field of operation unless a corporation is subject to taxation pursuant to §40-18-2, Ala. Code 1975, as the emphasized language in §40-18-31, Ala. Code 1975, makes clear. Stated another way, §§40-18-31 and 40-18-33, Ala. Code 1975, do not impose a tax above and beyond that imposed in § 40-18-2, Ala. Code 1975. Because we have concluded that UTCC was not subject to taxation under § 40-18-2, Ala. Code 1975, UTCC is not liable to pay income tax under §§ 40-18-31 and 40-18-33, Ala. Code 1975.
Based on the foregoing, we affirm the circuit court's summary judgment upholding the ALJ's administrative order nullifying the Department's assessment against UTCC. Having resolved the central issue of taxation in this manner, we need not address the various constitutional questions raised by the parties hereto. UTCC's motion to strike certain exhibits attached to the brief submitted by the Department is denied. Wilson v.Crosby Lumber Co., 386 So.2d 1173, 1174-75
(Ala.Civ.App. 1980).
AFFIRMED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.
[1] Vulcan, an Alabama-based corporation, used UTCC's railcars to transport materials from Alabama to destinations in numerous other states. However, the Department sought to tax all of UTCC's leased railcars that traveled in Alabama during the pertinent tax years.
[2] The circuit court also opined that the Department's contention that UTCC was subject to income tax pursuant to §40-18-2(a)(2), Ala. Code 1975, had been raised for the first time on appeal; however, it appears that the Department had asserted that issue in a pre-trial brief filed at the administrative level.