DONALDSON, Judge.
The Alabama Department of Revenue (“the Department”) appeals from a summary judgment of the Montgomery Circuit Court (“the trial court”) holding that U.S. Xpress Leasing, Inc. (“USXL”), a Tennessee corporation, is subject to Alabama’s lease tax under § 40-12-222(a), Ala. Code 1975, and, therefore, is. exempt from being assessed Alabama’s sales and use tax on certain, purchases it made in Alabama from Bridgestone America, Inc., Michelin North America, Inc., TA Operating Corporation, TRD, Inc., and Four Star Freightliner, Inc. (hereinafter referred to collectively, as “the joint petitioners”). See § 40-23-l(a)(9), Ala. Code 1975. The trial court’s judgment reversed a decision of the Alabama Tax Tribunal (“the tax tribunal”), which had denied USXL’s and the. joint petitioners’ petitions to the, Department seeking a refund of the sales and use tax they had paid to the State of Alabama related to USXL’s purchases from .the joint petitioners. Under the standard of review we are required to apply in this ease, we must reverse the trial court’s judgment.
Background
The following findings of fact made by the tax tribunal are not in dispute:
“[ÜSXL] is based in Chattanooga, Tennessee, and is in the business of leasing truck tractors and trailers to various lessees. [USXL] leased truck tractors and trailers to a related company, U.S. Xpress, Inc., during the periods in issue pursuant to a master lease agreement executed in Chattanooga in 2002.
“[USXL] purchased the tractors and trailers that it leased to U.S. Xpress from various truck dealers outside of Alabama. The dealers delivered the tractors and trailers to terminals operated by [USXL] outside of Alabama. [USXL] prepared the tractors and trailers for use, and U.S. Xpress drivers thereafter picked up and used the vehicles in Interstate commerce throughout the country, including a substantial number of miles traveled in Alabama.
“The master lease agreement required [USXL] to keep the vehicles in good working order. Consequently, if a leased vehicle needed new tires, or repairs while in Alabama, [ÚSXL] arranged for the work to be done at a garage or other facility in Alabama. It also purchased the tires, repair parts, and/or the other tangible property needed to perform the work from the joint petitioners/sellers. It is undisputed that the joint petitioners/sellers delivered the tires,. repair parts, etc., to [USXL] in Alabama, and consequently, that the sales were closed in Alabama.
“The joint petitioners , invoiced [USXL] for the items purchased, including Alabama sales tax. [USXL] paid the invoiced amounts and ... has now petitioned with the joint petitioners/sellers for refunds of the sales tax paid.
*52 “[USXL] did not have an Alabama sales tax license during the periods in issue, and also was not licensed to collect and remit Alabama lease tax to the Department during the periods. [USXL] accordingly did not file Alabama lease tax returns or remit Alabama lease tax to the Department on its tractor and trailer rentals during those periods.”
In 2012, USXL and the joint petitioners filed petitions with the Department pursuant to § 40-2A-7(c)(l), Ala. Code 1975, requesting a refund of the sales and use tax that USXL had paid as a result of the sales of the tires, repair parts, and other goods that USXL had purchased from the joint petitioners in Alabama between 2008 and 2011 on the basis that those purchases were exempt from the sales and use tax under § 40-23-l(a)(9). They argued that, because USXL was engaged in the business of leasing within Alabama, the transactions between USXL and the joint petitioners were subject to Alabama’s lease tax under § 40-12-222(a) and, consequently, exempt from the sales and use tax. In 2013, the Department denied USXL’s and the joint petitioners’ petitions for a refund.
On October 13, 2014, USXL and the joint petitioners filed notices of appeal to the tax tribunal from the Department’s denial of the petitions for a refund. See § 40-2A-7(c)(5)a., Ala. Code 1975 (providing that “[a] taxpayer may appeal from the denial in whole or in part of a petition for refund by filing a notice of appeal with the Alabama Tax Tribunal within two years from the date the petition is denied .... ”). The tax tribunal entered an order on December 3, 2014, granting the Department’s motion to consolidate the matters before the tax tribunal. The tax tribunal held a hearing on the matters on April 9, 2015. Following the hearing, the tax tribunal entered a written order- concluding that USXL was not subject to Alabama’s lease tax and, therefore, that USXL’s purchases of the tires, repair parts, and other goods from the joint petitioners were subject to the sales and use tax. The tax tribunal concluded that the use of the leased property within Alabama by U.S. Express, Inc. (“U.S. Express”), did not make USXL’s leasing of the vehicles to U.S. Xpress subject to Alabama’s lease tax. The tax tribunal stated in its order:
“[USXL], as lessor, and U.S. Xpress, as lessee, are both located in Tennessee. The master lease agreement was executed in Tennessee. The tractors and trailers were delivered by the dealers to [USXL] outside of Alabama and picked up by the U.S. Xpress drivers outside of Alabama.
“[USXL] owned no property, had no employees, and otherwise had no ties to Alabama other than the fact that U.S. Xpress used the leased tractors and trailers in Alabama. Finally, [USXL] did not lease tractors, trailers, or any other tangible personal property to any other lessees in Alabama during the subject periods. Given those facts, [USXL] clearly was not in the business of leasing the tractors and trailers or any other tangible personal property in Alabama during the periods in issue in transactions subject to the Alabama lease tax.
“When a lessor leases tangible personal property to a lessee outside of Alabama, as in this case, and the lessee uses the property in various states, including Alabama, again as in this case, the lessor is not subject to Alabama lease tax on the lease proceeds. This is confirmed by Reg. 810-6-5-09(10), which specifies that ‘[w]here the lessor leases a truck, truck [trailer], or semitrailer to a motor carrier outside this state, the receipts therefrom would not be subject to the (lease) tax although the truck, truck trailer, or semitrailer may occasionally *53 travel in this state in interstate commerce.’
“The'above regulation is directly on point in this case. [USXL] leased the tractors and trailers to the lessee, U.S. Xpress, outside of Alabama. The fact that U.S. Xpress subsequently used the property in Alabama did not make [USXL’s] leasing of the vehicles to U.S. Xpress subject to Alabama lease tax.”
Accordingly, the tax tribunal denied USXL and the joint petitioners’ request for a refund of the sales and use tax that had been paid on the purchases made between 2008 and 2011.
On July 14, 2015, USXL' and the joint petitioners filed a notice of appeal of the tax tribunal’s decision to the trial court pursuant to § 40-2B-2(m), Ala. Code 1975. On January 15, 2016, USXL and the joint petitioners filed a motion for a summary judgment. On January 19, 2016, the Department filed a cross-motion for a summary judgment. On February 16, 2016, the trial court held a hearing on the motions for a summary judgment and heard arguments of counsel for the parties. The trial court entered a judgment in favor of USXL and the joint petitioners on February 25, 2016, stating, in pertinent part, as follows:
“The Court having considered the pleadings filed in this matter, the briefs filed by both parties and the arguments of counsel, this Court finds that as a matter of law, a taxpayer is subject to lease tax in Alabama when tangible personal property is used or possessed in Alabama. The undisputed factual record in this case is that [USXL] leased trucks and trailers that not only traveled through Alabama, but stopped at terminals in Alabama for repairs. These actions subjected [USXL] to Alabama’s leasing tax imposed by Code of Ala. 1975, § 40-12-222. In addition, [USXL] paid sales tax for tires and repair parts purchased from Alabama vendors. However, as [USXL] was subject to lease tax, its purchases of tires and repair parts were exempt from sales tax under Code of Ala. 1975, § 40-23-l(a)(9)j.”
The trial court ultimately ordered the Department to refund the amount of sales taxes paid by USXL and the joint petitioners during the period in question. The Department filed a notice of appeal to this court on March 31, 2016. We have jurisdiction under § 12-3-10, Ala. Code 1975. The Department and USXL have filed briefs on appeal. The joint petitioners have not filed a brief, i
Standard of Review
“The standard of appellate review to be applied by the circuit courts and by this court in reviewing the decisions of administrative agencies is the same. See Alabama Dep’t of Youth Servs. v. State Pers. Bd., 7 So.3d 380, 384 (Ala. Civ. App. 2008). That prevailing standard is deferential toward the decision of the agency:
“ ‘Judicial review of an agency’s administrative decision is limited to determining whether the decision is supported by substantial evidence, whether the agency’s actions were reasonable, and whether its actions were within its statutory and constitutional powers.... Judicial review is also limited by the presumption of correctness which attaches to a decision by an administrative agency.’
“Alabama Medicaid Agency v. Peoples, 549 So.2d 504, 506 (Ala. Civ. App. 1989). Also, the Alabama Administrative Procedure Act provides that,
“‘[e]xcept where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agen *54 cy as to the weight of the evidence on questions of fact, except where otherwise authorized by statute.’
“Ala. Code 1975, § 41-22-20(k). ‘Neither this court nor the trial court may substitute its judgment for that of the administrative agency.’ Alabama Renal Stone Inst., Inc. v. Alabama Statewide Health Coordinating Council, 628 So.2d 821, 823 (Ala. Civ. App. 1993). ‘This holds true even in cases, where the testimony is generalized, the evidence is meager, and reasonable minds might differ as to the correct result.’ Health Care Auth. of Huntsville v. State Health Planning Agency, 549 So.2d 973, 975 (Ala. Civ. App. 1989).
“Further, this court does not apply a presumption of correctness to a circuit court’s judgment entered on review of an administrative agency’s decision ‘because the circuit court is in no better position to review an agency’s decision than this court.’ Alabama Bd. of Nursing v. Peterson, 976 So.2d 1028, 1033 (Ala. Civ. App. 2007). Finally, in order for the [agency’s] decision ... to warrant affir-mance, that decision would have to be supported by ‘substantial evidence,’ which in an administrative context is ‘relevant evidence that a reasonable mind would view as sufficient to support the determination.’ Ex parte Personnel Bd. of Jefferson County, 648 So.2d 593, 594 (Ala. Civ. App. 1994).”
Alabama State Pers. Bd. v. Dueitt, 50 So.3d 480, 482 (Ala. Civ. App. 2010).
Furthermore, because the trial court granted USXL’s motion for a summary judgment in this case,
“[t]he circuit court’s judgment ... is accorded no presumption of correctness.
“‘“In reviewing the disposition of a motion for summary judgment, ‘[an appellate court] utilize[s] the ■same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,’ Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was ‘entitled to a judgment as a matter of law.’ Wright v. Wright, 654 So.2d 542 (Ala. 1995); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence' creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is ‘substantial’ if it is of ‘such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)). Our review is further subject.to the caveat that [an appellate court] must réview the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the mov-ant, Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala. 1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990).”
“ ‘Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala. 1997). It has also been observed that “where the facts are not in dispute and we are presented with pure questions of law, .[the] standard of review is de novo.” State v. American Tobacco Co., 772 So.2d 417, 419 (Ala. 2000)(citing Ex parte Graham, 702 So.2d 1215 (Ala. 1997), and Beavers v. County of Walker, 645 So.2d 1365 (Ala. 1994)).’
“Carlisle v. Golden Rod Feed Mill, 883 So.2d 710, 711-12 (Ala. Civ. App. 2003).”
*55 State Dep’t of Revenue v. Union Tank Car Co., 974 So.2d 1024, 1026-27 (Ala. Civ. App. 2007).
“In cases of doubt, tax statutes are to be construed in favor of the taxpayer. [State v. Harrison, 386 So.2d [460] at 461 [(Ala. Civ. App. 1980)]. Although the interpretation of a statute by an administrative agency that is charged with enforcement of the statute is persuasive, Alabama Dep’t of Revenue v. Jim Beam Brands Co., 11 So.3d 858, 866 (Ala. Civ. App. 2008), that interpretation is not binding on this court. Britnell v. Alabama State Bd. of Educ., 386 So.2d 1148, 1149 (Ala. Civ. App. 1980).”
State Dep’t of Revenue v. Omni Studio, LLC, 222 So. 3d 367, 375 (Ala. Civ. App. 2016).
Discussion
The determinative question is whether TJSXL is exempt from paying the sales and use tax on the tires, repair parts, and other goods that it had purchased from the joint petitioners between 2008 and 2011 on the basis that USXL is subject to lease tax under Alabama law.
“The statutes governing Alabama’s lease taxes, §§ 40-12-220 through -227, Ala. Code 1975, were enacted in 1971. Lease taxes are part of a broad category of taxes often referred to as ‘privilege taxes’ or ‘license taxes.’ See, §§ 40-12-1 through -425. For lease tax purposes, a lease is defined as ‘[a] transaction whereunder the person who owns or controls the possession of tangible .personal property permits another person to have the possession or use thereof for a consideration and for the duration of a definite or indefinite period of time without transfer of the title to such property.’ § 40-12-220(5). Lease taxes are due monthly in varying percentages of gross proceeds derived by the lessor from, the lease, depending upon the items leased. §§ 40-12-222 and -224; see also §. 40— 23-7.”
Kauloosa Truck Leasing v. State Dep’t of Revenue, 661 So.2d 749, 750 (Ala. Civ. App. 1994).
Pursuant to § 40-12-222(a), in order for the lease tax to be assessed against a taxpayer, the-taxpayer must be “engaging or -continuing within this state in the business of leasing or renting tangible personal property.”[1] Section 40-23-2, Ala. Code 1975, imposes a tax on sales of property occurring in Alabama. Section 40-23-l(a)(10), Ala. Code 1975, defines the terms “sale at retail” or “retail sale,” in pertinent part, as “[a]ll sales of tangible personal property except those ,.. defined [in § 40—23—1(a)(9)j.] as wholesale sales.” Section 40—23—1(a) (9)j. defines the . terms “wholesale sale” or “sale at wholesale” as
“[a] sale of tangible personal property to any person engaging in the business of leasing, or renting tangible personal property to others, if tangible personal property is purchased for the purpose of leasing or renting it to others under a transaction subject to the privilege or *56 license tax levied in Article 4 of Chapter 12 of this title against any person engaging in the business of leasing or renting tangible personal property to others.”
Accordingly, under the definitions in § 40-23-l(a), taxpayers that are subject to the lease tax are exempt from paying the sales tax on goods purchased to repair or maintain leased property. Alabama Admin. Code (Dep’t of Revenue), Rule 810-6-5-.09(12), further provides that
“[t]he sale of tangible personal property to any person engaged in the business of leasing or renting the same tangible personal property to others in transactions subject to the rental tax is a wholesale sale and not subject to sales or use tax. This exclusion from sales and use tax also applies to replacement and repair parts purchased by the lessor for use in repairing tangible personal property leased or rented by the lessor. Where the lessor sells tangible personal property previously purchased at wholesale for the purpose of renting or leasing the property, regardless of whether the sale is to the person to whom the property had been leased or rented or to some other person, sales tax is due on the gross receipts derived from the sale.”
USXL argues that the taxable event that triggers assessment of the lease tax is the use and possession of leased tangible personal property in Alabama by the lessee during the lease period. USXL contends that, although its master lease with U.S. Xpress was entered into in Tennessee, it was engaged in the business of leasing tangible personal property in Alabama because U.S. Xpress operated the leased tractors and trailers within Alabama's borders. USXL contends that it should have been exempt from paying the sales tax on the tires, repair parts, and other goods it purchased from the joint petitioners pursuant to the exemption set forth in § 40-23-l(a)(9)j. USXL further contends that, pursuant to Rule 810-6-5.09(12), the purchases in Alabama of replacement and repair parts for the tractors and the trailers are exempt from the sales tax. ■
The Department argues that the phrase “engaging or continuing within this state in the business of leasing or renting tangible personal property” that appears in § 40-12-222(a) requires assessment of the lease tax only when the leased tangible property is used or possessed within Alabama’s borders.
Therefore, applying the rules of statutory construction, we examine the meaning of the phrase “engaging or continuing within this state in the business of leasing or renting tangible personal property.”
“ ‘[Principles of statutory construction instruct [a court] to interpret the plain language of a statute to mean exactly what it says and to engage in judicial construction only if the language in the statute is ambiguous.’ Ex parte Pratt, 815 So.2d 532, 535 (Ala. 2001)(citing Ex parte Alabama Great Southern R.R. & Norfolk Southern Ry., 788 So.2d 886, 889 (Ala. 2000), quoting in turn Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala. 1998)).
“ “We have said that a statute is ambiguous when it is of doubtful meaning. Ex parte Alabama Public Service Commission, 268 Ala. 322, 106 So.2d 158 (195[8]). Ambiguity in this sense has been defined as whether “A statute or portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses .... ” State ex rel. Neelen v. Lucas, 24 Wis.2d 262, 267, 128 N.W.2d 425, 428 (1964).’
*57 “S & S Distrib. Co. v. Town of New Hope, 334 So.2d 905, 907 (Ala. 1976).
“The principles of statutory construction are summarized in State Farm Mutual Automobile Insurance Co. v. Motley, 909 So.2d 806 (Ala. 2005):
. [T]he rule is well recog--nized that in the construction of a statute, the legislative intent is to be determined from a. consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found. The intent so deduced from the whole will prevail over that of a particular part considered separately.”
“ ‘Blair v. Greene, 246 Ala. 28, 30, 18 So.2d 688, 689 (1944).
“ ‘ “It is well settled that when it is interpreting a statute this Court seeks to give effect to the intent of the Legislature, as determined primarily from the language of the statute itself. Beavers v. County of Walker, 645 So.2d 1365, 1376 (Ala. 1994) (citing [McCall v.] McCall, 596 So.2d 2 (Ala. Civ. App. 199[1])); Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301 (Ala. 1991). Also, our rules of statutory construction direct us to look at the statute as a whole to determine the meaning of certain language that is, when viewed in isolation, susceptible to multiple reasonable interpretations. McRae v. Security Pac. Hous. Servs., Inc., 628 So.2d 429 (Ala. 1993).”
“ ‘Ex parte Alfa Fin. Corp., 762 So.2d 850, 853 (Ala. 1999).
“ ‘ “ ‘When interpreting a statute, [a court] must read the statute as a whole because statutory language depends on context; [a court] will presume that the Legislature knew the meaning of words it used when it enacted the statute.’ ”
“ ‘Ex parte USX Corp., 881 So.2d 437, 442 (Ala. 2003)(quoting Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue, 855 So.2d 513, 517 (Ala. 2003)).’
“909 So.2d at 813-14.
“ ‘[I]f the statute is ambiguous or uncertain, the Court may consider conditions that might arise under the provisions of the statute and examine the results that will flow from giving the language in question one particular meaning rather than another.’ Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301, 1305 (Ala. 1991).”
Hooks v. Coastal Stone Works, Inc., 164 So.3d 592, 597-98 (Ala. Civ. App. 2014).
Section 40-12-220, Ala. Code 1975, contains definitions of many terms that are used in that part of Alabama’s tax code regarding the lease tax. The term “business” is defined in § 40-12-220(1) as “[a]ll activities engaged in, or caused to be engaged in, by any person with the object of gain, profit, benefit, or advantage, either direct or indirect to such person.” Section 40-12-220(5) defines the terms “leasing” or “rental” in pertinent part as “[a] transaction whereunder the person who owns or controls the possession of tangible personal property permits another person to have the possession or use thereof for a consideration and for the duration of a definite or indefinite period of time without transfer of the title to, such property.” The term “tangible personal property” is defined as “[p]ersonal property which may be seen, weighed, measured, felt, or touched, or .is. in any other manner perceptible to the senses. The term ‘tangible personal property1 shall not include stocks, bonds, notes, insurance or other contracts, or securities.” § 40-12-220(8). The terms “engaging” or “continuing” and the phrase “within this state” are not specifically defined in *58 § 40-12-220. Therefore, we examine decisions of this' court and of the supreme court interpreting § 40-12-222 and/or similar provisions of Alabama’s tax code for guidance in defining those terms.
In Union Tank Car Co., supra, this court examined whether Union Tank Car Co. (“UTCC”), a Delaware corporation with its corporate headquarters located in Illinois, derived income from sources within Alabama that subjected it to an assessment of Alabama’s income tax. UTCC leased specialty railcars to customers throughout the United States. Other than leasing railcars to one Alabama entity, UTCC had no ties to Alabama. UTCC was not subject to the franchise tax, see §§ 40-21-52 and 40-8-1(b)(5), Ala. Code 1975, but UTCC paid the Department an Alabama license tax “based on the market value of the railcars and the number'of miles that the railcars traveled in Alabama.” 974 So.2d at 1025, Because UTCC’s leased railcars had been used by its lessees to transport materials within and outside Alabama, the Department determined that UTCC’s lease income was subject to Alabama income-tax assessment under § 40—IS—2(a)(3), Ala. Code 1975, which provides for the levying of a tax on income against “[ejvery corporation doing business in Alabama or deriving income from sources within Alabama, including income from property located in Alabama.” (Emphasis added.) UTCC appealed the assessment to the Department’s administrative-law division, which found- in favor of-UTCC. Subsequently, on appeal, the Montgomery Circuit Court entered a summary judgment in favor of UTCC.. On appeal by' the Department to this court, this court held that “the railcars were used to transport material within and outside-Alabama and did not remain solely intrastate during their use.” 974 So.2d at 1029. Accordingly, this court concluded that UTCC did not derive income from sources within Alabama. Id.
In Boswell v. Paramount Television Sales, Inc., 291 Ala. 490, 282 So.2d 892 (1973), the Department assessed a lease tax against Paramount Television Sales, Inc. (“Paramount”), a California corporation, pursuant to § 629(22) of Title 51, Code of Alabama 1940 (Recomp. 1958), the predecessor statute, to § 40-12-222(a), Paramount entered into lease contracts with television stations located in Alabama whereby Paramount shipped films and videotapes to the television stations for broadcast or telecast. The circuit court found that Paramount’was not subject to a lease-tax assessment on the proceeds from the transactions. On appeal, our supreme court concluded that 'the films that Paramount leased were tangible personal property and that Paramount was engaged in the business of leasing or renting tangible personal property in Alabama. That court stated that “[a]n article which has been transported in interstate commerce having arrived at its destination and there held for use or disposal becomes subject to the state’s taxing and police power.” Boswell, 291 Ala. at 494, 282 So.2d at 894-95 (citing Alexander Film Co. v. State, 253 Ala. 439, 44 So.2d 581 (1960)). The court concluded that “[w]e think that transferring possession of the films to the local stations and renting them for use by the-stations-constituted a local act which was the taxable event occurring wholly in Alabama after the completion of its interstate journey and before the return of the property in interstate commerce.” Boswell, 291 Ala. at 495, 282 So.2d at 896.
In Lepeska Leasing Corp. v. State Department of Revenue, 395 So.2d 82 (Ala. Civ. App. 1980), an Illinois corporation leased an X-ray machine to a hospital located in Mobile. The Department assessed. a: use tax against the taxpayer on the transaction pursuant to § 40-23-60 et seq., Ala. Code 1975. The circuit court *59 affirmed the assessment. On appeal, this court held that the corporation could not be assessed a use tax because, pursuant to § 40-12-222(a), “persons. engaged in the business of leasing or renting tangible personal property to others in the State of Alabama are subject to a 4% tax on the gross proceeds derived from leases or rentals.” Lepeska Leasing Corp., 395 So.2d at 84 (emphasis added). This court also noted that § 40—23—60(4)(i), Ala. .Code 1975, which defines the terms “wholesale sale” or “sale at wholesale” substantially the same as those terms are defined in § 40-23-l(a)(9)j., “excludes from the coverage of the use tax purchases made by lessors who are subject to the lease tax under § 40-12-222.” Id. Applying the rules of statutory construction, this court determined that the corporation was “a person engaged in the business of leasing or renting tangible personal property.” Accordingly, this court held that the corporation was subject to the lease tax imposed by § 40-12-222 and, therefore, that the transaction was excluded from the application of the use tax. Id. at 85.[2]
In an administrative decision, the Department’s administrative-law division stated that
“[wjhether a lessor is engaged in the business of leasing must be decided on the facts of each case. Factors to be considered are whether the lessor intended to engage in leasing on a regular, continuous basis, the number and frequency of the leases, and did the lessor hold itself out or advertise as being in the leasing business.”
State Department of Revenue v. U.S. Die Casting, Op. Of Dep’t of Revenue, Admin. Law Div., Docket No. L. 91-208 (Nov. 24, 1993)(Final Order)(citing Robert L. Simpson, Annotation, Sales and Use Taxes: Exemption of Casual, Isolated, or Occasional Sales, 42 A.L.R.3d 292 (1972)). See also State v. GM & O Land Co., 49 Ala.App. 707, 710, 275 So.2d 687, 689 (1973)(defining the phrase “engaging in the business of leasing or renting tangible personal property” as it appeared in § 629(22) of Title 51, Code of Alabama 1940 (Recomp, 1958), the precursor statute to § 40-12-220(a), as “a continuous and regular course of dealing, rather than an irregular or isolated transaction”).
In the present case, it is uncontested that USXL is engaged in the business of leasing; Through the master lease with U.S. Xpress, USXL entered into a transaction where it permits U.S. Xpress to have possession or use of its tractors and trailers for a specified period and without transferring title to the property for the purposes of gain, profit, benefit, or advantage to USXL. § 40-12-220(1), (5), and (8). We cannot conclude, however, that USXL engages or continues in the business of leasing of its tractors and trailers within Alabama as required by § 40-12-222(a). USXL is a Tennessee corporation headquartered in Chattanooga. U.S. Xpress, also a Tennessee corporation, leases tractors and trailers from USXL pursuant to the master lease that the parties executed in Tennessee, thus establishing that USXL is a business engaged in leasing in Tennessee. See GM & O Land Co., 49 Ala.App. at 710, 275 So.2d at 689. Any income USXL derives from the lease does not come from a source within Alabama. Instead, to the extent USXL derives income from its lease of tangible property to U.S. Xpress,' that income is derived from a source located in Tennessee. See Union Tank Car Co., 974 So.2d at 1029. The *60 transfer of possession of the tractors and the trailers occurred in Tennessee, not in Alabama; thus, there is not a local act that constituted a taxable event occurring wholly in Alabama. See Boswell, 291 Ala. at 495, 282 So.2d at 896, U.S. Xpress operates the tractors and the trailers throughout the United States, and it contends that, in 2013, 7,135 of its leased trucks traveled through Alabama for a total of 16 million miles of operation in this state. USXL also contends that it is registered to conduct business with the Alabama Secretary of State and that it has paid income tax to Alabama derived from its business. But USXL has not shown that it has leased tangible personal property to any person in Alabama, and there is no evidence indicating that USXL has executed any leases in Alabama. See Lepeska Leasing Corp., 395 So.2d at 84. The business of leasing that USXL engages in with U.S. Xpress occurs in Tennessee, regardless of the locations where U.S. Xpress operates the tractors and trailers. Here, there is no taxable event to which § 41-12-222(a) would apply. Rather, the only taxable event that has occurred in Alabama is USXL’s purchase of tires, repair parts, and other goods from the joint petitioners in Alabama. USXL further contends that it conducts business in Alabama by having its tractors and trailers repaired at locations in Alabama. Repairs of such a nature are incident to USXL’s ownership of the tractors and the trailers that it leases, but we cannot conclude that having repairs made on the tractors and the trailers in Alabama constitutes “engaging or continuing within this state in the business of leasing or renting tangible personal property” under § 40-12-222(a).
Further, as noted by the tax tribunal in its order, Ala. Admin. Code (Dep’t of Revenue) Rule 810—6—5—.09(10), states that “[w]here the lessor leases a truck, truck trailer, or semitrailer to a motor carrier outside this state, the receipts therefrom would not be subject to the [lease] tax although the truck, truck trailer, or semitrailer may occasionally travel in this state in interstate commerce.” This rule underscores the Department’s interpretation and application of § 40-12-222(a) to scenarios such as the one in the present case.
“[I]t is well established that in interpreting a statute, a court accepts an administrative interpretation of the statute by the agency charged with its administration, if that interpretation is reasonable. Ex parte State Dep’t of Revenue, [683 So.2d 980 (Ala. 1996)] (citing Alabama Metallurgical Corp. v. Alabama Pub. Serv. Comm’n, 441 So.2d 565 (Ala. 1983)). Absent a compelling reason not to do so, a court will give great weight to an agency’s interpretations of a statute and will consider them persuasive. Ex parte State Dep’t of Revenue, supra (citing Moody v. Ingram, 361 So.2d 513 (Ala. 1978)).”
State v. Pettaway, 794 So.2d 1153, 1157 (Ala. Civ. App. 2001).
USXL directs this court to State Department of Revenue v. General American Transportation Corp., Op. Of Dep’t of Revenue, Admin. Law Div., Docket No. R. 84-107 (July 27,1984)(Final Order), a decision issued by the Department’s administrative-law division in an appeal from lease-tax assessments, for the proposition that the taxable event is the use or possession of USXL’s leased property within Alabama. In that case, the taxpayer, an Illinois company engaged in the business of manufacturing and leasing railroad cars, leased railcars to lessees that operated the rail-cars within various states, including Alabama. Otherwise, the company had no business operations in Alabama, and the lease agreements it entered into with the *61 lessees were executed in Chicago. The Department sought to assess a lease tax against the company on two types of transactions: “those involving railcars which travelled from points within Alabama to other points in Alabama, and those involving railcars which travelled from points within Alabama to points outside Alabama.” At issue in that case was “whether the railcars, as used by the lessees, were so integrally involved in interstate commerce as to be shielded from state taxation by the commerce clause.” The administrative-law judge ultimately ruled that “[t]he taxable event ... was the use or possession of the railcars by the lessees during the lease periods.”
In its order entered in this case, the tax tribunal stated:
“I concede that the ... rationale [of General American] supports [USXL’s] position. Upon further review, however, I now believe General American was wrongly decided, and that the rationale of Union Tank Car is correct. That is, a lease transaction occurs or is closed where the lessor transfers physical possession of the leased property to the lessee. In Paramount, the lease transactions were closed when the California, lessor delivered the tapes and films to the television stations in Alabama. Alabama lease tax was accordingly due on those transactions closed in Alabama. Conversely, where a lease transaction is closed outside of Alabama, the Alabama lease tax does not apply, i.e., the lessor is not in the business of leasing in Alabama, even if the out-of-state lessee sometimes uses the property in Alabama.”
USXL also contends that the Department’s administrative decision in General American constituted a rule establishing when a transaction is subject to the lease tax. USXL contends that the Department could not make a decision contrary to the decision pronounced in General American without following the requirements under the law for changing its administrative rules. USXL cites Heckler v. Community Health Services of Crawford County., Inc., 467 U.S. 51, 61 n.12, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984), for the proposition that “an administrative agency may not apply a new rule retroactively when to do so would unduly intrude upon reasonable reliance interests.” USXL further contends that § 41-22-5, Ala. Code 1975, part of the Alabama Administrative Procedure Act (“the AAPA”), § 41-22-1 et seq., Ala. Code 1975, requires a state agency to provide at least 35 days’ notice before the adoption, amendment, or repeal of any rule.
General American, however, was a decision by the Department’s administrative-law division and not a “rule.” Pursuant to § 41-22-3(9), a part of the AAPA, the term “rule” is defined, in relevant part, as
“[ejach agency regulation, standard, or statement of general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure, or practice requirements of any agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule or by federal statute or by federal rule or regulation.”
Excluded from that definition are “[determinations, decisions, orders, statements of policy, and interpretations that are made in contested cases.” § 41-22-3(9)d. General American, therefore, did not constitute a “rule” under the AAPA. As our supreme court has stated:
“The correct rule is that an administrative interpretation of the governmental department for a number of years is entitled to favorable consideration by *62 the courts; but this rule of construction is to.be laid aside where it seems.reasonably certain that the administrator’s interpretation has been erroneous and that a different construction is required by the language of the statute. State v. Wertheimer Bag Co., 253 Ala. 124, 43 So.2d 824 [ (1949) ]; Drenn[e]n Motor Co. v. State, 279 Ala. 383, 185 So.2d 405 [ (1966) ]; East Brewton Materials, Inc. v. State Department of Revenue, 45 Ala. App. 584, 233 So.2d 751 [ (1970) ].”
Boswell v. Abex Corp., 294 Ala. 334, 336, 317 So.2d 317, 319 (1975).
USXL further cites Ala. Admin. Code (Dep’t' of Revenue), Rule 810-6-5-.09(8), for the proposition that possession and use of leased property in Alabama determines whether the lease tax will apply. That rule provides that “[w]hen a lessor (i) is located outside Alabama, (ij) leases tangible personal property to a lessee within Alabama and (iii) the leased property is used in Alabama; the total gross proceeds from the lease of tangible personal property in this state are subject to rental tax.” In this case, however, there is no evidence, establishing that USXL leased any tangible personal property to a lessee within Alabama; instead, USXL leased tractors and trailers to U.S. Xpress pursuant to a master lease executed in Tennessee.
We conclude that USXL is not engaged in the business of leasing, in Alabama pursuant § 40-12-222(a) and, therefore, is not exempted from paying the sales and use tax under § 40-23-l(a)(9)j. on its purchases of tires, repair goods, and other materials from the joint petitioners between 2008 and 2011. Accordingly, USXL and the joint petitioners are not entitled to a refund of the sales and use tax paid on those purchases.
Conclusion
For the foregoing reasons, the summary judgment entered by the trial court is reversed, and we remand the cause to the trial court for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
Thbmpson, P.J., and Pittman, Thomas, and Moore, JJ., concur.

. The relevant part of § 40-12-222(a) reads: “In addition to all other taxes now imposed by law, there is hereby levied and shall be collected as herein provided a privilege or license tax on each person engaging or continuing within this state in the business of leasing or renting tangible personal property at the rate of four percent of the gross proceeds derived by the lessor from the lease or rental of tangible personal property; provided, that the said privilege or license tax on each person engaging or continuing within this state in the business of leasing or renting any automotive vehicle or truck trailer, semitrailer or house trailer shall be at the rate of one and one-half percent of the gross proceeds derived by the lessor from the lease or rental of such automotive vehicle or truck trailer, semitrailer or house trailer...

. The court ultimately concluded that the corporation, although subject to the lease tax, was exempt from paying the lease tax under § 40-12-223(7), Ala. Code 1975, a code section not applicable in this case.